# United States District Court
## Eastern District of California

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| v. | |
| **Enrique Juan MURRIETTA** | **DOCKET NUMBER:** 6:24-mj-00005-HBK |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ISSUANCE OF ARREST WARRANT

I, John Hesdon, Law Enforcement Park Ranger, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief.

### EXPERIENCE AND TRAINING OF THE AFFIANT

1. I am a commissioned Law Enforcement Officer with the National Park Service. I have six years and 8 months of experience as a law enforcement ranger for the National Park Service. I was trained in conducting investigations at the law enforcement academy at Temple University in 2016 and again in 2018 at the Federal Law Enforcement Training Center. I serve as a field trainer for the National Park Service and am frequently tasked with observing and training new officers in the conducting of law enforcement investigations and field operations. I have conducted multiple interviews and investigations relating to assaults, vehicle crimes, and alcohol related offenses, among others, throughout my Park Service career.

### NATURE OF THE AFFIDAVIT

2. This affidavit is being submitted in support of a criminal complaint charging **Enrique Juan MURRIETTA** (hereinafter **MURRIETTA**) with storing an open container in a vehicle in violation of 36 CFR 4.14 (b) and providing a false statement to a law enforcement officer in violation of 36 CFR 2.32 (3). This affidavit does not purport to set forth all my knowledge or all investigation information in this matter but instead presents the information necessary for the authorization of a criminal complaint.

3. The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the

| | |
|---|---|
| Speedy Trial Act Applies: **No** | U.S. v. MURRIETTA<br>Criminal Complaint |

events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the issuance of a complaint and attendant arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## ELEMENTS OF CHARGES

4. <u>36 CFR 4.14 (b)</u>-"Carrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area is prohibited."
5. Maximum penalty: imprisonment for not more than 6 months and fine up to $5,000.

6. <u>36 CFR 2.32 (a)(3)</u>- "The following are prohibited: *False information.* Knowingly giving a false or fictitious report or other false information: (i) To an authorized person investigating an accident or violation of law or regulation"
7. Maximum penalty: imprisonment for not more than 6 months and fine up to $5,000.

## FACTS IN SUPPORT OF PROBABLE CAUSE DETERMINATION

8. On March 6th, 2024, at approximately 12:50am, Yosemite National Park dispatch was contacted by California Highway patrol regarding a call received from a woman who claimed that her boyfriend would not let her leave the car and was driving very erratically. The woman was also reported to have left the connection open and was heard lying to the other individual in the car about who she was talking to, saying it was the digital assistant "Siri".
9. The woman was able to eventually give a description of her car, a Silver Toyota. The woman stated that they had pulled over east of the Arch Rock entrance station and that she had managed to hide the keys from the driver.
10. Dispatch relayed the above information via phone call to myself and officer Justin FEY (Fey). Fey and I responded after receiving the call. While driving to the scene I confirmed with dispatch that there had been no violence on the initial report. and learned that there was a knife somewhere inside of the vehicle.
11. I arrived on scene at approximately 1:42am and observed a male subject standing by the driver's side door of silver Toyota Camry and a woman standing by the passenger side. I ordered the male to put his hands up and walk towards me, he did so, turning away from me as he went. I placed the male, later identified as Enrique Murrietta, in handcuffs, frisked him due to the nature of the call and the presence of the knife on scene, and placed him in the back of my patrol vehicle. I informed Murrietta that I was not arresting him but was detaining him until I could figure out the situation. As I was placing him in handcuffs, Murrietta made a statement that he had pulled the car over after seeing wet spots appear behind the vehicle, which is why the hood was up.

## STATEMENT FROM K.H.

12. I then spoke to the female passenger, hereafter referred to as K.H. The following is

Speedy Trial Act Applies: **No**  U.S. v. MURRIETTA
Criminal Complaint

information gleaned from the comments she gave to myself and officer Fey who arrived on scene shortly after I did:

13. K.H. stated she and Murrietta had started in the car in Mariposa and when K.H. attempted to leave the car, Murrietta prevented her from doing so by driving quickly and angrily away with both parties in the vehicle. K.H. tried to reason with Murrietta but instead her attempts to placate him angered him further. The pair stopped outside of the Yosemite bug hotel and K.H. got out of the car and attempted to run.

14. K.H. made it approximately ten to twenty feet before she was grabbed and forcefully put back into the car by Murrietta.

15. They then began driving again, approximately eighty to one hundred miles per hour, driving through a red light onto the one lane Ferguson bridge. While driving, Murrietta made comments about finding the highest cliff and going to hell with K.H.. Murrietta also drove very close to a passing truck. K.H. then placed the calls to 911 while going in and out of cell phone service. K.H. stated that she had hidden the keys behind a nearby rock and requested that we avoid showing Murrietta where they were. Dispatch informed me that Murrietta's driver's license had been suspended.

### SEARCH OF VEHICLE

16. The vehicle was registered to K.H., and with her permission I searched the vehicle, finding a fixed blade knife as well as a half empty bottle of sherry and Murrietta's wallet in the passenger compartment of the vehicle.

### MURRIETTA STATEMENT AND SFSTS

17. I then returned to Murrietta in the rear seat of my patrol vehicle. I reiterated to Murrietta that he was not under arrest, then gave him a Miranda advisement. I then removed Murrietta from the vehicle, removed his handcuffs and moved him to the bumper of my car. When asked, Murrietta gave the following statement:

18. He and K.H. had been heading to the park to be able to get away to a more peaceful place. He stated that he had not been driving at all and that himself and K.H. had been fighting for days over a conflict in their sex life. When asked what his plans had been for that night, Murrietta merely restated that he wanted to get away to the park. Murrietta stated that he had been drinking from the half empty sherry bottle that he observed me take from the cabin of K.H.'s car. Murrietta repeatedly stated that he had not driven at all that night when asked.

19. Following his statement, I put Murrietta through the standardized field sobriety tests (SFSTs). He did not show sufficient clues to indicate impairment.

### ARREST AND FOLLOW UP

20. Following the conclusion of the SFSTs, I informed Murrietta that he was under arrest, placed him in handcuffs and searched him. Nothing of note was found during the search of his person.

21. After Murrietta was placed in the back of my patrol vehicle myself and Fey confirmed that K.H. was okay to drive. After seeing the liquid on the ground she requested that we watch her test the brakes to make sure they were working properly. As K.H. got into the driver seat, she needed to adjust the seat in order to be able to drive properly, moving the seat and chairback forward. I then transported Murrietta to Mariposa County Jail while Fey remained behind to assist

Speedy Trial Act Applies: **No**

U.S. v. MURRIETTA
Criminal Complaint

K.H. with her vehicle.

## CONCLUSION

22. Based on the foregoing, I submit there is probable cause to believe that **MURRIETTA** committed the following offenses: storing an open container in a vehicle and providing a false statement to a law enforcement officer in violation of 36 CFR 4.14(b), and 36 CFR 2.32(a)(3) respectively.

_____ 3/6/24
John Hesdon
Law Enforcement Park Ranger
Yosemite National Park, CA

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this 6th day of March, 2024.

_____
THE HONORABLE HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

Speedy Trial Act Applies: No

U.S. v. MURRIETTA
Criminal Complaint